Good morning. May it please the Court. Elizabeth White for the United States. Before I delve into what constitutes conspiracy and what constitutes a theft offense, I'd like to take just one minute to urge the Court to reach the issue and to reverse the district court's finding of selective prosecution. Well, he didn't. I mean, he vacated that order, besides which we have another case in which he did that. Well, I'll tell you what, though. What he said at the – when he orally dismissed the oral ruling dismissing the case based on selective prosecution, what he said was, he said to the defendant, if you move to dismiss this case on selective prosecution, I will grant that motion and I will vacate the prior order denying your motion to dismiss on the due process grounds. Now, then the next day, after we filed a motion for reconsideration, he issued an order vacating the dismissal on due process grounds and granting it. Okay? And so to us, as I said in our opening brief, it was unclear to us whether that written ruling superseded and mooted or whether it simply confirmed him doing what he said he was going to do based on the dismissal on selective prosecution. As I say, we haven't – if you're trying to make a point, we have another case in which it's absolutely clear. Okay. Thank you. Then the other point that I think I can dispose of pretty quickly because I don't have much to say beyond what is in the government's brief is this idea about whether conspiracy, whether generic conspiracy requires an overact. And as I pointed out in the brief, we have literally a century of Supreme Court and Ninth Circuit precedent, Supreme Court precedent primarily making clear that the essence of conspiracy is the agreement, and 18 U.S.C., the overact requirement in 18 U.S.C. 371 is the exception that proves the rule that the Supreme Court has said to Congress, we have a formula for you here. If you want to – What about the Supreme Court decision in Deskamp, the recent decision, June 2013? Okay. Does that help you, hurt you? I think it doesn't affect this case at all. I mean, I think Deskamp clarified a lot for a lot of us, essentially proved that Judge Berzon has been right all along on this entire issue. But what Deskamp said is that you can only go to the documents, you can only use the modified categorical analysis to find out with respect to a divisible statute which of the listed crimes the defendant actually committed. Now, the issue, the element of the burglary statute at issue in Deskamp, which was also the element of the burglary statute at issue in Edwards, this Court's recent decision, was about the mode of entry. And both California and Nevada criminalize anyone who enters any of these 20 places to do any of these six things. And it doesn't – that piece isn't divisible, because it doesn't say lawfully or unlawfully, breaking and entering or – So why? And was this a conspiracy to commit burglary? You're saying no, it was a theft offense. What I'm saying is the only thing we used the modified categorical analysis for in this case was to determine what was of the six divisible, unlawful objectives of the entry in Nevada's burglary statute, because Nevada's burglary statute prohibits entering one of these 20 places with intent to commit larceny, grand larceny, assault, any felony, taking money under false pretenses, and one other one. You know, with respect to that element of the burglary statute, that is absolutely divisible. That's exactly what you're supposed to use, the modified categorical analysis. But does – doesn't – isn't there still a problem because a theft of a categorical defense requires that there be actual possession of the property and it wasn't here? Well, because – but what we're talking about here is we're – we are – we're talking about Section G, which is the theft offense, and then Section U, which is a conspiracy to commit one of those offenses, is an aggravated felony as well. A conspiracy, the collective criminal agreement, is a separate – I mean, that is a separate harm. But the target offense has to be a generic offense as well. Yes. Well, when you agree – this is what the district court said in its initial ruling denying the motion to dismiss. When you – when you agree to intend to commit larceny, I mean, once – when you make the agreement and you haven't done the thing yet, what you're doing is agreeing to intend to do it.  But the question is what's the thing? And if the thing does not involve actual possession, then you still haven't agreed to do a generic crime, a theft crime. Well, in this case, what she was charged with and what she was pleaded guilty to was conspiring to enter this store with intent to commit larceny. Okay. The larceny – could she commit larceny without actually possessing a – without actually taking something? I don't believe so. I mean, this Court has said, and I cited the cases in our brief, that larceny is a theft offense. The elements of larceny in – let's see. Larceny is a theft offense. Well, that's what this Court said in Hernandez-Cruz v. Holder, was larceny is a theft offense under 843G. The elements of the theft offense is stealing or taking or carrying away. I mean, that's the Nevada larceny statute. But larceny is sort of the quintessential theft offense, really. So I don't know – I don't know that that's certainly – that wasn't one of the issues that the defendant raised below. They were saying that there was a difference. I thought that's what the supplemental briefing was about, at least in part. Well, the supplemental briefing, I think, to the extent that it was attempting to rely on discounts, I don't see what the element – I mean, what they were saying is that the elements – they were comparing the elements of burglary with the elements of generic theft. And what I'm saying is, is that when the charging document and the guilty plea and the judgment of conviction all make clear that of the divisible, of the six different things that you can intend to do when you enter one of these 20 places is larceny that is incorporated, that is part of what you pleaded guilty to, what you were convicted of. You weren't convicted. If she had been – if this had been conspiracy to enter a store with intent to commit assault, that is not a theft offense. How was she convicted of? Burglary? I'm sorry? How was she actually convicted of? Conspiracy to commit burglary. Conspiracy to commit burglary. Right. That was the charge. Commit burglary in Nevada by entering with the intent to commit a larceny, even if you don't commit a larceny. Exactly. So how do you get around a burglary, then? It has to be a burglary. In other words, she didn't commit a larceny. So she didn't possess anything. So it can't – how could it be a theft offense? Because – because it's not – what it is is conspiracy to commit a theft offense, right? I mean, she agreed to do this. Whether or not she actually did it, it is the collective criminal agreement that is – I mean, that's why we punish. The agreement was an agreement to enter with the intent to commit larceny.  Yes. Not an agreement to commit a larceny. A larceny. Yes. She could have done it. So are you saying – I'm sorry. Go ahead. Are you saying because it's the conspiracy charge that there's no over-the-act requirement issue here? Yes. Because it's the conspiracy. I mean, because what subsection U says, it says that either attempts or conspiracies to commit any of these underlying offenses. And contempt and conspiracy, you know, those are both inchoate. But the conspiracy is still only conspiracy to enter with an intent rather than a conspiracy to do it. I understand it's a fine-cut difference, but it is a difference. The idea that when you agree to do something and you haven't done it yet, you are agreeing to intend to do it. I mean, I don't – other than, yes, you also have to walk into this store to do it. And that's, you know, there's this extra. If anything, it's, you know, there's an extra requirement with respect to burglary than with respect to conspiracy. All right. Let's go to the conspiracy issue first because you're running out of time. Okay. Your contention is that the general – I mean, in general, Taylor generic analysis does not depend on common law or not – certainly doesn't depend exclusively on common law. Yes, that's right. Rather, it depends largely on contemporary habits. Yes. And the contemporary habit appears to be, with regard to the Motto Penal Code and most States and most treatises, that in ordinary criminal contexts, as opposed to antitrust or certain other things, there is an overt act requirement. I don't know that I would say that. I mean, I think that when you've got – you know, what you've got is the Supreme Court saying that when States want to put an overt act requirement in or when Congress they're talking about. I understand. I'm asking a different question. This is a predecessor question. Okay. If we didn't have this supposed special override rule and we were just applying Taylor straight out without any other rule of construction, it seems to me we would conclude that there was an overt act requirement for a generic conspiracy. I know that the defendants submitted a list of all the State statutes and which ones do and which ones don't, and I don't know how those numbers break down. I'm sorry. All right.  Okay. So you are – what you're now doing is you're taking essentially an override and you're saying, well, Taylor, despite the usual Taylor methodologies, here we have essentially a rule of Federal statutory construction that trumps it. And trumps what would otherwise be the case. Yes. I mean, I'm not sure that I would grant the initial premise, but that said, yes, what we have here, what we're talking about here is a Federal statute. And this is about whether subsection U, whether that conspiracy requires an overt act or not. But that – what troubles me is that seems to take the statute out of its context, because the context here is to describe a universe of other statutes, State and Federal, in a particular context, i.e., the description of criminal conspiracies for essentially day-to-day crimes. Well, I mean, I think there is an assumption. In particular, when you've got not only 100 years of precedent, but you've got the Supreme Court 20 years ago saying we have given Congress a formula, this is how we are going to interpret their statutes. They know that if they want an overt act requirement, they need to put it in there, because if it's not in there, we're going to assume it's just general conspiracy, which just requires an agreement. So when you've got 100 years of precedent, 20 years of, hey, Congress, here's how we're going to interpret this, and then you've got Congress putting in conspiracy without a requirement of an overt act, you know, Congress is – is understood to understand what – how the Supreme Court is going to interpret their cases and what their cases are going to say. Thank you very much. Thank you. We will hear from your opponents. Good morning. May it please the Court, Lauren Gorman on behalf of the appellee, Xochitl Garcia-Santana. Your Honor, I'll start with the supplemental briefing, because I can see that's where the Court started. And let me just clarify, and I think I can do this briefly, that the mismatch of elements that we are talking about in our supplemental briefing is a mismatch between a mens rea requirement in the Nevada statute, intent to commit larceny. That is an element unto itself. Larceny is not an element. It's intent to commit larceny, a mental state. And the actus reus of an actual physical taking in a theft offense. And that's the mismatch that we're talking about. And under desk camps, our position is you can never move on to the modified categorical inquiry. The inquiry ends there. And because of that mismatch, we simply can't move on. It's not an aggravated felony. Are you backtracking from your briefing where you indicate that, and I'm quoting now, the issue on appeal is narrow. Does conspiracy to commit burglary or conspiracy to commit a theft offense require an overt act and furtherance of the conspiracy in order to qualify as an aggravated felony, end quote? Is that the issue you want us to address? I would like to address that issue. But the Court, desk camps came down after our reply brief was filed. Actually, the main issue in the lower court, I was the lawyer in the lower court. I didn't do all the appellate briefing, other than the supplemental briefing, just to be clear so I can't answer in terms of what the thought of the lawyer was. But I can say that. Did you read the appellate brief that was filed? I perused it. No, of course, I read it. And when desk camps came down, I actually approached that lawyer and I said, this issue that you decided to not really pursue, it appears to be revived by the Supreme Court, and I think it wins the case. It's clear, it's simpler. I still think the conspiracy issue, which I would still like to get to. Have you waived the argument because it's not in the brief? Your Honor, I think the Supreme Court. The new argument? I don't believe we've waived it. The Supreme Court has said over and over that claims are waived, not arguments. This is an argument that was raised in a supplemental briefing and in the lower court. The government has had ample opportunity to respond to it. Was this case briefed at the time that Aguilar-Montes was? Yes. So essentially the law was against you at that point. Yes. But I still need some clarification on the argument. The argument is, in other words, you need to split this off, as I understand it, from the conspiracy point, because the Federal statute does, as I understand it, not admit of conspiracy to do whatever it is that is otherwise an aggravated felony. So it can't be that it's the conspiracy aspect of it that makes it not that splits off the mens rea. It has to be one level closer in, right? Yes. All right. So can you explain to me how it is the conspiracy is a conspiracy to, because she was convicted of burglary, to enter with an intent to commit larceny? Yes. The actus reus that is the object of the conspiracy is the burglary. The mens rea is the intent to commit larceny. Essentially, as much as it may torture us in a common-sense way, I mean, there is an agreement to enter, in this case it was a building, but to enter any enumerated structure with this mental state. And that is what she pled to. Those are the elements. We can't get – we can never get to conspiracy to commit a theft offense, because she didn't plead to conspiracy to commit larceny. She didn't plead to an agreement to commit the physical act of larceny. It was an agreement to commit a burglary with this mental state. And, Your Honor, if there's no additional question, I'll move on to the conspiracy argument. Yeah. I mean, it's sort of a nice question, because nice meaning interesting, because you have – I mean, as I set it up before, you have, I think, where – let's assume we have where Taylor would get you, and then we have this Federal's rule of statutory construction, and the argument is which – issue is which one wins. Yes. Your Honor, our position is that Taylor applies. We – first of all, I – well, there's two different issues that I'd like to address. One is that Taylor's methodology applies, because we know that we apply Taylor whenever we're talking about in sentencing statutes, in immigration contexts. We use Taylor to – when we were trying to figure out what a theft offense was, this circuit applied Taylor to all of a sudden say, well, when we're trying to figure out what conspiracy to commit a theft offense is, let's not use Taylor. Let's just revert to the common law. Let's not talk about the contemporary usage of conspiracy. I mean, that proposition is not well taken. The structure of 1101A43 is – I mean, it's much like a sentencing statute. It's this laundry list of predicate convictions which carry very serious implications both immigration-wise and in the criminal context. Some of them are Federal statutory codes. Some of them are just generic offenses like a theft offense or a burglary offense. So it's a lot more like the ACCA than either the Sherman Act or 371. Well, I haven't looked through all of the subcategories of aggravated felonies. But for example, we do know, I gather, that in Federal law, a conspiracy to engage in certain drug offenses doesn't require an override act. The conspiracy to pardon? Engage in certain drug offenses does not require an override act. Yes. Right? Presumably some of those are also aggravated felonies. Absolutely. Those are the Sherman Act-esque type criminal statutes. No, but I mean they're aggravated felonies in the list of aggravated felonies. Oh, yes. So a conspiracy, would you argue, if it was one of those crimes, that the conspiracy is still requires an override act even though the Federal crime doesn't require an override act? Absolutely not. We're not arguing that. What we're – our position is that you have to look at conspiracy in the context of the substantive offense. There is no conspiracy without looking at the substantive offense. And so in a sense, actually, subsections. So you're in a sense not saying that we look at Taylor. You're therefore not arguing for a consistent Taylor interpretation of conspiracy. You're saying that it's one way or the other way. You're saying it depends on the substantive offense. Yes, we are. And there are – there are some Section 371 conspiracies in there. The Mann Act is a 371 conspiracy. That's an aggravated felony. So we're not saying that subsection U somehow dispenses with the – or provides an override act requirement where the explicit statute says that no override act is required. But the Nevada burglary statute, is it divisible with respect to the object of the entry? With the respect to the object of the entry? Yes, it is. Is it not divisible? It's – yes. It's not divisible for the purposes of a theft offense, but it is – it's, of course, divisible in terms of the object of the entry. It's – you either enter an outhouse, a commercial establishment. I think he means enter with the intent to do X, Y, or Z. Well, the way I see it, it's intent to do – intent to commit larceny, intent to commit burglary, intent to commit the three elements of that. So it is divisible to that degree? It's divisible if – in terms of the mens rea. There's different mens reas that fit into it. But it's not divisible in the sense that I'm talking about or that our argument is talking about. Larceny and intent to commit larceny are two different elements. Let me ask you to comment on this. This is what your opponent wrote in the supplemental briefing. Deskamps directs, and it argues this is what it is doing, to use the modified categorical approach to determine that the object of Garcia-Santana's burglary of the several alternatives listed in the statute was larceny, and then compares the elements of the crime of the conviction, including the larceny objective, with the elements of the generic crime. Your Honor, our – They're saying they follow what Deskamps says they should do. Our position is that that is not true to Deskamps. Because? Because intent to commit larceny is a mental state. The object of the conspiracy is the burglary. So our position is that intent to commit larceny and larceny, those are two different elements. One's a mental state and one's an action. I mean, that's one of the most ancient distinctions in criminal law, is actus reis and at the risk of using Latin. It's actus reis and mens reis. Your Honor, if there's no other questions about Deskamps, I'll return briefly to the burglary. I did submit a supplemental case when I walked in here today. It was briefed in the lower court. It's actually an unpublished Ninth Circuit opinion which ruled in our favor. It gave an overt act requirement for conspiracy in 1101.43. You know, this calendar is the first one in which I have had many, many people arguing unpublished opinions to us. It's not terribly useful. Fair enough. I – I briefed in the lower court. I was reading the lower court briefs this morning and I thought I would at least provide it. But what I do think might be helpful is a published opinion when this Court, when the Ninth Circuit was trying to figure out what the definition of attempt was, which attempt and conspiracy are both in subsection U. In that case, unti negeth vi mucesi, they did not use the – this Court did not use the common law. Instead, they relied on the second and second. Yeah, but here we have a special problem, which is I understand we don't rely on the common law, except for the fact that we have this, you know, unusual special rule of construction with regard to the word conspiracy. Your Honor, I – I believe that our – that in terms of the rule of construction, even if we applied the rule of construction, there's still an overt act requirement. If you look at the structure – and I'm out of time, if you're on the line. Go ahead. If you look at the structure of Section 371 and you look at the structure of the Sherman Act, of the Sherman Act, 1101A43U is – is more – it's – structurally it's identical to Section 371. I mean, what subsection U says is that, look, there's some substantive offenses, some of which are Sherman Act-type statutes, and for the ones where you just have, for example, a generic offense or an offense that doesn't talk about conspiracy at all, doesn't reference a statute, then subsection U says, hey, we mean conspiracy and attempt also. And so subsection U functionally is identical to 371. 371 says, okay, if a criminal statute is silent as to conspiracy, then you can still underline conspiracy liability, you need an overt act, but you can use Section 371 to provide us with conspiracy culpability. So essentially, even if you say you need an overt act, that's the difference. Section 371 does, but U doesn't. Well, yes, that's true. I'm just saying structurally they're the same. Subsection U is like 371 in that it gives you conspiracy culpability where none is obvious from the substantive underlying offense. And so we're saying even if you apply that canon of statutory construction, you can still get to an overt act requirement. Okay. Thank you very much. Thank you. I believe you're out of time. If I may, let me thank both of you. You did an excellent job and were very helpful. I was going to say the same thing. Really, it was an exceptional argument to thank both of you. The United States versus Garcia-Santana is submitted, and we will take a short break. Thank you. All rise. This court is being recessed.  Thank you. How about back to my right? Thank you. Thank you. Thank you. Thank you. I just wanted to see where you were going. We have one, we have like four. Thank you. Thank you. I have two different ones. I don't know which one is mine. So, let's see. I don't think, I'm not sure. Thanks, okay. This is really quite something. Okay. Oh, yeah. Thank you. We'll see. So, is it? It's the little guy. Does that mean it's charging? Can you, do you know how we tell? Good question. Yes, looks like it's charging. Okay, so that means, okay, great. Alright. Okay. Thank you. Okay. Oh, I'm sorry. It's fine. Thank you for now.  Thank you. Thank you. Thank you. Thank you. Thank you. All right. This Court now reviews the second case. Okay. So the case of United States v. Sakura. Sakura has been submitted on the briefs and will go to Solano-Rivera v. Holder.
judges: Zouhary, Alarcon, Berzon